CADY (STEVENS v.). See Case No. 13,395.

---

## Case No. 2,285.
### CADY v. WHALING et al.
[7 Biss. 430.][1]

Circuit Court, E. D. Wisconsin. May, 1877.

SUIT BY ASSIGNEE—FRAUD—JURISDICTION OF COURT OF EQUITY.

1. An assignee in bankruptcy may maintain an action to set aside fraudulent conveyances made by the debtor before he is adjudged a bankrupt, and even before the bankrupt act was passed, provided the person to whom the transfer was made was a party to the fraudulent intent, or received the transfer without valuable consideration, and provided the action is not barred by the statute of limitations.

2. Courts of equity possess a general concurrent jurisdiction with courts of law in cases of fraud cognizable in the latter.

[Cited in Sill v. Solberg, 6 Fed. 471.]

3. An assignee in bankruptcy stands in the position of judgment creditor and can bring a suit in equity to set aside a fraudulent conveyance.

This was a bill in equity, to part of which each of the defendants demurred. The bill was filed by [Augustus F. Cady] the assignee in bankruptcy of the estate of Charles L. Peirce and James M. Whaling, bankrupts, and charged in brief that in November, 1867, the bankrupts commenced business in Milwaukee, as partners under the firm name of Peirce & Whaling, with a nominal capital of $5,000. That at the time of commencing business, neither of the partners had any other property, exclusive of what was put into the business, except such as was by law exempt from seizure for debts. That immediately after November, 1868, they extended their business largely, buying upon credit, and by July, 1869, were in possession of a stock of merchandise of the value of one hundred thousand dollars. That notwithstanding the amount of goods bought and

---

[2] [From 5 Chi. Leg. News, 462.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

sold by them, said Peirce & Whaling were on the first of January, 1870, insolvent, which fact of insolvency appeared on their books of account, and was known to both of the bankrupts, but was not known to their creditors. That the firm and the individual members thereof, were largely insolvent, constantly from the first of January, 1870, until the date of the filing of a petition in bankruptcy against them, on the 6th of July, 1876. The extent of this alleged insolvency, from year to year, was stated in detail in the bill, which alleged that when the petition in bankruptcy was filed, they were owing, over and above the value of their assets, more than $300,000. Alleged fraudulent acts on the part of the defendant, James M. Whaling, relating to the merchandise account of the firm, and also relating to an inventory of the goods of the firm, made August 1st, 1875, were set forth in the bill. It was also alleged that on the 1st of January, 1870, the bankrupts were indebted to Jones & Laughlins of Pittsburgh, Penn., in a large amount, for merchandise purchased and for moneys loaned; that the moneys so loaned and advanced were entered upon the partnership books of Peirce & Whaling by the name of "accommodation account;" that this accommodation account was opened March 13th, 1869, and that from that time forward, Jones & Laughlins continued to advance moneys to the bankrupts, for the purpose of carrying on said business, until the 1st of January, 1876, when the bankrupts were indebted to the Pittsburgh firm, upon the accommodation account, in the sum of $99,177.57. The indebtedness of Peirce & Whaling to Jones & Laughlins, from year to year, beginning January 1st, 1871, was set forth in items in the bill.

The bill further alleged, that the defendants, James M. and Ella M. Whaling, intermarried about December 15th, 1869, and that at the time of her marriage, she, the said Ella M. Whaling, had no separate estate aside from her wardrobe and bridal presents, and that she had not received since her marriage any separate estate from any person, except her husband, other than such articles as had been presented to her upon anniversary occasions or holidays. That during the time Peirce & Whaling were in business, the defendant, James M. Whaling, drew out of the firm and from its assets, the sum of $154,000, and appropriated the same to his own use. That with moneys drawn from the firm while it, and each member thereof, was insolvent, the defendant, James M. Whaling, purchased the real and personal property described in the bill, taking title to all of the real estate so purchased, in the name of his wife, the defendant, Ella M. Whaling, and for the purpose, and with the intent to hinder, delay and defraud his creditors, then existing, and in fraud of the rights of his creditors, then and now existing, and the rights of complainant

as assignee in bankruptcy, and without any consideration paid therefor by said Ella M. Whaling. That the personal property was purchased and paid for during the years 1870, '71, '72, '73, '74, '75 and '76, and while the defendant, James M. Whaling, was absolutely insolvent, and owing Jones & Laughlins over $100,000. That after the purchase of this property, the defendant, James M. Whaling, made a voluntary gift of the whole thereof, by word merely, to his wife, the defendant, Ella M. Whaling, who now claims that she is the owner thereof, and in the lawful possession of the same. The personal property referred to, was alleged to consist of valuable household furniture, ornaments, etc., and stated in the bill to be of the value of about $10,000, and was alleged to be not exempt from execution or seizure for the payment of debts.

The bill also charged that the defendant, James M. Whaling, while a member of the firm of Peirce & Whaling, and while he and said firm were insolvent, procured a large amount of insurance upon his life, payable in case of his death, to his wife, Ella M. Whaling. That he paid all of the premiums therefor, from the time of so taking the same, until the time of the filing of the petition in bankruptcy, out of the moneys and property of Peirce & Whaling, that the amount of such life insurance was and is about $40,000. That the said Ella M. Whaling never paid of her own money or property, anything upon such life policies, but that the same were so taken by said Whaling, payable to his wife, in fraud of the rights of his creditors, and of complainant's rights as assignee; the said James M. Whaling thereby intending to make a provision for his wife out of the assets of the firm of Peirce & Whaling, and to defraud his creditors, then and now existing. These policies of insurance were set forth in detail in the bill.

The prayer of the bill was: that the said Ella M. Whaling might be required forthwith to surrender the possession of all of property, real and personal, described in the bill, to complainant, pending this suit, or that a receiver of said property may be appointed by the court, to whom said property shall be transferred and delivered; that the defendants might be enjoined from in any manner interfering with, incumbering or disposing of the property; that the conveyance of all of the real estate to Ella M. Whaling, might be adjudged fraudulent and void, and to be held in trust for the creditors of Peirce & Whaling, and of the defendant, James M. Whaling, and that a decree might be entered for the conveyance and release of such real estate to complainant; that all gifts and voluntary conveyance of the personal property mentioned in the bill, to said Ella M. Whaling, might be decreed to be fraudulent and void, as against the creditors of James M. Whaling, and as against complainant as assignee in bankruptcy; and

that said Ella M. Whaling be required to deliver the said personal property to complainant, and to assign all of said life policies to complainant as such assignee. To so much of the bill as related to the personal property therein mentioned, and as sought to avoid the claims of the defendant, Ella M. Whaling, thereto, both of the defendants demurred.

David S. Ordway, for complainant.
James G. Jenkins, for defendants.

DYER, District Judge. It is alleged in support of the demurrer: First, that an assignee in bankruptcy cannot maintain an action to set aside or avoid a transfer of property made by the bankrupt prior to the time limited by the bankrupt law itself; in other words, that to enable an assignee to avoid a transfer or conveyance of property made by the bankrupt in fraud of creditors, it must be alleged and shown, that such transfer or conveyance was made within the period prescribed by section 5129, Rev. St.; and that if such transfer or conveyance is made more than six months before the filing of the petition in bankruptcy, the assignee is without authority or right to maintain an action in behalf of creditors, to set aside such transfer and to recover the property.

It is true, that by the section of the statutes referred to, it is provided, that if an insolvent person, within six months before the filing of a petition in bankruptcy against him, makes any transfer or disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent, and that such transfer or conveyance is made with a view to prevent the property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under the act, or to defeat the object of, or in any way impair, impede or delay the operation and effect of the act, then the transfer or conveyances shall be void, and the assignee may recover the property or the value thereof, as assets of the bankrupt. But it does not follow that the assignee in bankruptcy can only avoid such a fraudulent transfer of property made by the bankrupt, as comes within the purview of this section. This section deals only with frauds on the act itself, and by reference to section 5046, it is found, that property conveyed by the bankrupt in fraud of his creditors, is, in virtue of the adjudication of bankruptcy, and the appointment of an assignee, vested in such assignee, subject only to the exceptions stated in section 5045, which relate to property exempt from seizure for the payment of debts.

The point under consideration has been so fully settled, that without further discussion, I regard it only necessary to refer to two or three cases in which the question has been passed upon. In Pratt v. Curtis [Case No. 11,375] it was held that land conveyed in fraud of creditors passed to the assignee in bankruptcy of the grantor, by virtue of section 14 of the bankrupt act [14 Stat. 522], now section 5046, Rev. St., though conveyed more than six months before the bankruptcy, and was therefore, not a transfer within section 35 of that act, now section 5129, Rev. St.

In Carr v. Hilton [Case No. 2,436] it was held under the bankrupt act of 1841 [5 Stat. 442], that an assignee could maintain a bill to avoid and set aside a fraudulent conveyance of lands by the bankrupt to a third person, although such conveyance was made before the passage of the bankrupt act.

This question has also been considered and passed upon in this circuit, in case of Bradshaw v. Klein [Case No. 1,790]. In his opinion in that case, Judge McDonald says: "Counsel for the defendant insist that the 35th section of the act modifies the language of the 14th section, and limits the right of action to set aside fraudulent conveyances, to four, or at most, six months; but I cannot assent to this construction. I think the provision above cited from the 14th section refers to the state statutes against fraudulent conveyances, and to this only; and that the 35th section of the bankrupt act [14 Stat. 534] has no reference to those statutes, but is only intended to reach frauds on the bankrupt act. The two sections relate to different subjects, neither of them therefore, can be construed as explaining, modifying or limiting the operation of the other." And the conclusion is, that an assignee in bankruptcy may maintain an action to set aside fraudulent conveyances made by the debtor before he is adjudged a bankrupt, and even before the bankrupt act was passed, provided the person to whom the transfer was made was a party to the fraudulent intent, or received the transfer without valuable consideration, and provided the action is not barred by the statute of limitations.

Other authorities of the same purport might be cited, but these are sufficient.

The second point urged in support of the demurrer is, that as to the personal property mentioned in the bill, the complainant has ample remedy at law; that no discovery is needed, and therefore, that the complainant cannot, as to such personal property, come into equity.

It is to be borne in mind that the claim on the part of the complainant is, that the defendant, James M. Whaling, in fraud of his creditors, appropriated moneys, belonging in equity to the creditors of Peirce & Whaling, and part of the assets of that firm, and with such moneys purchased the property in question, and undertook, while in a condition of insolvency, to transfer the property to, and vest the title thereof, in his wife.

Here upon complainant's claim is involved the avoidance of a voidable legal title vested in the wife, and the case seems to be one of a class in which the rule frequently asserted

has been applied,—that courts of equity possess a general concurrent jurisdiction with courts of law, in cases of fraud cognizable in the latter. This is decided in the case of Spalding v. McGovern [Case No. 13,217]. In that case the court said: "Although the complainant claims title under proceedings in bankruptcy, the cause of action is not created by the bankrupt act: It is in the nature of a creditor's bill to reach assets placed by the debtor in the hands of third parties, in order to hinder, delay and defraud the creditors. An equitable jurisdiction exists in the court over the case, wholly independent of the bankrupt law."

In the case just cited, a bill in equity was filed to collect certain moneys and property, alleged to have been fraudulently paid and transferred by the bankrupt to his wife, after his insolvency, and also to set aside a conveyance of real estate made through the medium of one of the defendants, to hinder, delay and defraud the creditors of the bankrupt; and the bill was entertained, a demurrer thereto being overruled.

In Traders' Nat. Bank v. Campbell. 14 Wall. [81 U. S.] 87, a suit in equity by the assignee, to recover the proceeds of goods sold under judgment in a state court against the bankrupt, taken by confession, where both parties knew of the insolvency, was maintained, notwithstanding the proceeds were money in the possession of the bank, and a suit at law would seem to have been an adequate remedy.

The precise point under consideration was presented in the case of Flanders v. Abbey [Case No. 4,851], a case which arose and was decided in this district. In that case there was a demurrer to a bill, one of the causes of demurrer assigned being that the complainant had complete remedy at law, and the demurrer was overruled.

My conclusion is, that the second ground urged in support of the demurrer in the case at bar, is untenable.

The third and last point insisted upon by counsel for the defendants, and to be considered is, whether the complainant as assignee. can maintain this bill for and on behalf of general creditors, who have no specific lien by judgment, levy or otherwise, upon the property in question.

In support of the demurrer upon this point, it is urged, that the assignee in bankruptcy took no other rights of property than the bankrupt himself possessed, and that he cannot pursue, for the benefit of general creditors, property that may have been fraudulently conveyed by the bankrupt; that is, that as between the parties, the title to the property given, transferred or conveyed, is good as against the assignee and cannot be impeached in behalf of general creditors.

Support for this position is found in Re Collins [Id. 3,007]. decided by Justice Hunt, and that case is relied upon by counsel for the defendants. In his opinion in the case,

Justice Hunt holds, that "in a case of a fraudulent incumbrance upon personal property, a general debt will not authorize a proceeding to vacate it. There must be a bill of sale, or mortgage, or execution, or a judgment levy, or its equivalent, constituting a lien upon the specific chattel. The cases are all based upon the theory, that the party attacking the fraudulent act, must have an interest in, or a lien upon the specific property thus incumbered. This is an indispensable requisite; the assignee gains no additional rights over those possessed by the bankrupt, by a conveyance from him, or by his authority. The bankrupt can transfer no lien upon this specific property, because he possesses none; the creditors can give to the assignee no such lien, for the same reason."

This case is certainly strong authority to sustain the position taken by the learned counsel for the defendants, upon this demurrer, but I do not feel at liberty to follow it as an authority, in view of the fact that it has been virtually dissented from by Mr. Justice Strong, in Miller v. Jones [Id. 9,576], and its soundness expressly denied by the circuit judge of this circuit, in an opinion delivered by him at the present term, in Re Gurney [Id. 5,873]. In the case of Miller v. Jones, supra, it was held that an assignee has the rights of a judgment creditor, as against a chattel mortgage not properly recorded. In his opinion, Justice Strong says, that "notwithstanding some decisions to the contrary, an assignee in bankruptcy of mortgagors stands in the position of such creditors, with equal rights; the adjudication of bankruptcy being equivalent to the recovery of a judgment and a levy."

In his opinion in Re Gurney, supra, Judge Drummond holds, that an assignee does not, as to creditors, stand precisely in the place of the bankrupt; that he can contest rights to property which the bankrupt cannot contest, and he says that in this circuit it has been uniformly held that the assignee occupies a stronger position as the representative of creditors, than the bankrupt. "That he is the agent of the creditors for the protection of their rights; that the assignee stands in the place of an attaching or execution creditor, and that he has all their rights."

In Bradshaw v. Klein, supra, it was argued that the assignee took such right of action only, as the debtor had before he was adjudged a bankrupt. and that as he could not have sued before the adjudication to recover property conveyed by him in fraud of his creditors, so his assignee cannot afterwards maintain such action; but it was held, that although the transfer of property, made with intent to defraud creditors in that case, was valid as between the parties to it. nevertheless, the assignee, representing the rights of creditors, could maintain an action to have the alleged fraudulent con-

veyance set aside, and the property subjected to the payment of debts due to creditors, who by virtue of the bankrupt act, were represented by the assignee.

In view of the rulings of the courts upon this question, which I have cited, and especially in view of such as have been recently made, I must hold the third ground upon which this demurrer is urged, as equally untenable with those before considered.

Demurrer overruled, with leave to the defendants to answer that portion of the bill demurred to within thirty days.

See preceding case. 7 Biss. 426 [In re Pierce, Case No. 11,130], as to status of assignee.