D. P. BEASLEY, TRUSTEE IN BANKRUPTCY OF THE ESTATE OF P. S. COGGINS, BANKRUPT, *Appellant,* v. P. S. COGGINS, AND HIS WIFE, LILLA F. COGGINS, *Appellees.*

1. A trustee in bankruptcy appointed under the provisions of the act of Congress to establish a uniform system of bankruptcy, passed July 1st, 1898, occupies a relation similar to that of a judgment creditor of the bankrupt, and may file a bill in equity to set aside a fraudulent conveyance of real estate by the bankrupt although neither he (the trustee) nor any creditor has reduced any claim against the bankrupt to judgment.

2. Where a bill filed by a trustee in bankruptcy to set aside a fraudulent conveyance of real estate by the bankrupt made more than four months prior to the adjudication in bankruptcy, alleges that such conveyance was a voluntary one to his wife,

through an intermediary trustee, and was in fact a gift, without any valuable consideration; that the bankrupt was largely indebted and insolvent at the time of making such conveyance, that such bankrupt at the time of such conveyance was a merchant and then intended an indefinite continuance of his mercantile business, and contemplated the creation of further indebtedness, and that said voluntary conveyance was contrived and executed of covin and collusion for the purpose and intent that the creditors of the bankrupt, both prior and subsequent to its execution, should be delayed, defrauded and defeated in the collection of their just claims, such a bill is not obnoxious to demurrer; and the fact that such voluntary conveyance was recorded on the day after its execution does not impair the right of the trustee as imparting notice to subsequent creditors; for while such recordation is notice of the execution of the conveyance, it is not of itself notice of the secret and fraudulent purposes of the bankrupt in executing it, and such a conveyance if fraudulent in fact will be set aside in favor of the trustee.

This case was decided by Division A.

Appeal from Circuit Court for Madison county.

### Statement.

The appellant D. P. Beasley filed his bill in the Circuit Court of Madison county as trustee in bankruptcy of P. S. Coggins, alleging that the said Coggins was adjudged a bankrupt by the United States District Court on July 8th, 1902; that he, Beasley, was duly selected and appointed as trustee in bankruptcy of and for all the estate of said Coggins, and was then such trustee, as shown by exhibits attached.

The bill alleges substantially that P. S. Coggins, prior to being adjudged a bankrupt, was engaged in the mercantile business at the city of Madison, in Madison county, and had been so engaged for several years prior thereto, and had then contracted a large amount of indebtedness with various creditors, of about $12,000.

The bill sets forth an indebtedness to several persons, including the Bank of Madison, on several notes, all due on March 8, 1901, and other debts contracted subsequent to March 8, 1901, and all unpaid and due when the bill was filed; that Coggins being so indebted on March 8, 1901, in a large sum of money, intended a continuance, for an indefinite period, of his said mercantile business, contemplated the creation of further indebtedness, and was then, on said March 8, 1901, insolvent; that on said March 8, 1901, said Coggins and his wife, Lilla F., executed a deed of certain landed property to W. F. Parramore upon an alleged and fictitious consideration of $50, and that Parramore on the same day conveyed said property to Lilla F. Coggins for an alleged and fictitious consideration of $50; that said deeds were properly recorded on March 9, 1901; that the lots so conveyed, upon information and belief, are worth $3,500; that said lots of land were, on March 8, 1901, the property of P. S. Coggins; that it was the purpose of Coggins by the recited deeds to make a gift of said lots of land to his wife, Lilla F. Coggins, without any valuable consideration, that said deeds were made, contrived and executed of covin and collusion by the parties to the end, purpose and intent that the creditors of Coggins both prior and subsequent, should be delayed, defrauded and defeated in the collection of their lawful and just debts and demands against Coggins, and that deeds are fraudulent and utterly void, as against the claims and demands of the creditors of Coggins.

The bill, among other things, prays a decree declaring said deeds to be fraudulent and void against the claims and demands of creditors; that the real estate thereby attempted to be conveyed to be sold, and the proceeds paid to the trustee in bankruptcy, to be disposed of in the regular administration of the estate of the bankrupt. Copies of the deeds are made exhibits to the bill, and also a copy of the order appointing the complainant as trustee in bankruptcy.

The defendants demurred to this bill on the following

grounds, in substance, *viz*: 1st. That the bill does not make out a case entitling complainant to discovery or relief.

2nd. That it does not show any judgment, or lien upon the property.

3rd and 4th. That it does not show that complainant has exhausted his legal remedies, and that he has a full and adequate remedy at law.

5th. That the clauses alleging the several deeds were made to hinder and delay creditors, etc., are demurred to because: 1st. The same are impertinent.

2nd. That all persons who become creditors after March 8, 1901, had notice of them, and that the trustee can not claim said deeds void as to such creditors.

3rd. That said deeds can only be avoided, if at all, by creditors whose claims existed at the date of said conveyances.

Upon a hearing this demurrer was sustained, and from this order an appeal was taken.

The assignments of error are, first, that the court erred in making the order sustaining the demurrer to the bill, and, second, that the court erred in holding that complainant must allege and prove a judgment at law before the bill of complaint could be maintained.

*Roberson & Small, C. J. Hardee* (with whom was *R. H. Rowe* on the brief) for appellant.

*Chas. E. Davis* for appellees.

HOCKER, J. (*after stating the facts*).—It does not appear upon what ground the court below sustained the demurrer to the bill—but presumably all the grounds were sustained.

The general rule is that before a creditor can maintain a bill in equity to set aside a conveyance by his debtor, of his real estate, on the ground of fraud, the creditor must reduce his claim to judgment or its equivalent, a decree for,

a balance remaining, after a foreclosure sale of mortgaged property, creating a lien on such real estate, and when personal property or equitable assets are pursued he must have an execution issued and returned *nulla bona. Robinson v. Springfield Company,* 21 Fla. 203. But does this rule apply to such a suit by a trustee in bankruptcy?

Section 70 of the act of Congress to establish a uniform system of bankruptcy, passed July 1, 1898, provides: "The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all    *    *    *    (4) property transferred by him in fraud of his creditors." In addition to the foregoing paragraph E, section 70, provides: "The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred or its value from the person to whom it was transferred, unless he was a *bona fide* holder for value prior to the date of the adjudication," etc. Section 67e treats of conveyances, transfers, etc., made by a bankrupt within four months prior to filing the petition, with intent to hinder, delay or defraud creditors.

Some of the Federal courts have found difficulty in reconciling these sections of the bankrupt act, but it seems to us that the views express in *In re. Mullen,* 101 Fed. Rep. 413, text 416, are substantially correct. It is there said that section 70e was intended to provide simply that the trustee in bankruptcy should have the same right to avoid conveyances as was possessed by creditors, or any of them, and this with especial reference to the statute of 13 Elizabeth. Under the bankruptcy act, when one is thereunder adjudged a bankrupt, creditors are not permitted to attack fraudulent conveyances of their debtor, made more than four months of the adjudication of bankruptcy, and if the trustee could

not do so, then the act would constitute "a device to permit fraudulent conveyances to take effect with impunity in case they are successfully concealed for the specified four months." *Lewis v. Gray,* 47 N. Y. App. Div. 554, text 558. It is only by holding that the trustee is subrogated to the rights of creditors against a fraudulent conveyance that full effect and operation can be given to the statute of 13 Elizabeth against fraudulent conveyances from which our statute, section 1991, Rev. Stats. of 1892, is substantially taken. In *Wall v. Cox,* 101 Fed. Rep. 403, the second headnote is as follows: "A trustee in bankruptcy seeking to set aside and annul a bill of sale and transfer of property previously made by the bankrupt, and alleged to have been fraudulent under the bankruptcy law, and as against creditors, may appropriately proceed by bill in equity, and will not be required to seek his remedy at law." It is true that the transfer there sought to be set aside was made three days before the petition of involuntary bankruptcy was filed and involved a transfer rendered void, if made to hinder and delay creditors under section 67e of the bankruptcy act. But no reason is apparent why the same rule should not apply to fraudulent transfers covered by the cited provisions of section 70. The case of *Platt, Assignee, v. Mathews,* 10 Fed. Rep. 280, arose under the bankrupt law previous to that of 1898. A bill was filed by the assignee to reach property alleged to have been fraudulently transferred by the bankrupt. It was contended on demurrer that, as no creditor had a judgment and execution against the bankrupt, such a bill would not lie. The court held that inasmuch as the bankruptcy act vested the assignee with the title of all property conveyed by the bankrupt in fraud of creditors, that the assignee acquired his rights through the act and not through what had been done by the creditors. The court overruled the demurrer.

In Bump on Fraudulent Conveyances, section 553, it is stated that in order for an assignee in bankruptcy to maintain a bill to set aside a fraudulent conveyance, it is not

necessary that he shall have a lien on the property and obtain a return of *nulla bona.* In *Cady v. Whaling,* 7 Bissell 430, an assignee in bankruptcy filed a bill to set aside a fraudulent conveyance made before the bankrupt act was passed. It was contended that such a bill could not be maintained on behalf of general creditors who had no specific lien. The contention was overruled. The question is very thoroughly discussed in *Mueller, Trustee, v. Bruss,* 112 Wis. 406, — N. W. Rep. —, where it is held that the bill might be maintained though no judgment at law had been recovered. The deeds sought to be set aside in the case at bar were made about fourteen months before P. S. Coggins was adjudged a bankrupt. At the time they were made he is alleged to have been insolvent, and the bill shows that some of the debts he owed at the time of the deed were unpaid and owing when he was adjudicated a bankrupt. The bill further alleges that the deeds of March 8, 1901, from P. S. Coggins to Parramore, and from Parramore to Mrs. Coggins, were made without valuable consideration, and were voluntary.

In the case of *McKeown v. Allen,* 37 Fla. 490, 20 South. Rep. 556, this court held that "a voluntary conveyance by one who is indebted is presumptively fraudulent when attacked by a judgment creditor upon a debt existing at the time of its execution." As, in our opinion, a trustee in bankruptcy occupies a relation similar to that of a judgment creditor, we think that the first four grounds of the demurrer should have been overruled.

The remaining grounds of the demurrer are directed to the allegations upon which is founded the prayer of the bill requiring the defendants to answer whether P. S. Coggins on the 8th day of March, 1901, contemplated the creation of other and further indebtedness during the conduct of his mercantile business, and whether the conveyances from Coggins to Parramore, and from Parramore to Lilla F. Coggins, were executed and contrived by the defendants and Parramore of covin and collusion to the end, purpose and intent that such persons as should afterwards become

the creditors of P. S. Coggins, in pursuance of his said intentions to create further indebtedness, should be delayed, hindered and defrauded of their just and lawful debts and demands. It is contended, first, that these allegations are impertinent. We are not aware of any recognized practice in equity authorizing a defendant to raise the question of impertinence in a bill by demurrer. The recognized practice, as we understand it, is to bring the matter of impertinence to the notice of the court by motion for a reference or by exceptions. 19 Ency. Pl. & Pr. 200, 207, 208, 214; Story's Eq. Pl. (10th ed.) section 266, *et seq; Eastham v. Liddell,* 12 Vesey, Jr., 201. But assuming the court might on its own motion refer a bill for impertinence, if the matter was called to its attention, we, in view of our conclusions, do not regard these allegations of the bill, or the prayer of the bill in relation thereto, as impertinent.

Under the two last grounds of demurrer it is contended that creditors who became such after the deeds from P. S. Coggins to Parramore and from Parramore to Lilla F. Coggins, the wife of P. S. Coggins, were recorded, to-wit: after the ninth day of March, 1901, had constructive notice of said deeds, and therefore such creditors could not attack said deeds as being voluntary, and that the trustee in bankruptcy occupies no more advantageous ground than such subsequent creditors.

In the case of *Alston v. Rowles,* 13 Fla. 118, the rights and status of subsequent creditors were referred to on page 136. Justice WESTCOTT there says: "The doctrine of the Supreme Court of the United States as announced in the leading case of *Sexton v. Wheaton,* (8 Wheat. 229) and as understood by Judge Story, is that a voluntary conveyance made by a person not indebted at the time, in favor of his wife, can not be impeached by subsequent creditors upon the mere ground of its being voluntary. It must be shown to be fraudulent in fact, or to be made with a view to future debts." The opinion in this case (*Sexton v. Wheaton*) was written by Chief-Justice MARSHALL, and learnedly discusses

the proper construction and effect to be given the statute of 13 Eliz., dealing with fraudulent conveyances as regards creditors, and the statute of 27 Eliz., dealing with fraudulent conveyances as regards purchasers. These two statutes are substantially embraced in sections 1991 and 1992, Rev. Stats. of 1892. This case and the kindred one of *Salmon v. Bennett,* 1 Conn. 525, are selected in 1st American. Leading Cases, 17, as the basis for very elaborate discussion and annotation. On page *40 it is said: "Against subsequent creditors, as is decided in *Sexton v. Wheaton,* a conveyance is not void unless actually fraudulent. But there is a little obscurity as to what are the frauds of which they might take advantage. If the fraud be directed specifically against subsequent creditors, that is, if a voluntary settlement be made with a view to becoming subsequently indebted, which may be inferred from the fact of debts being contracted immediately after, there is no doubt that the settlement may be avoided by subsequent creditors. But that is not the only sort of fraud that may be taken advantage of by subsequent creditors; for it is clear, that if a conveyance be made colorably with actual intent to defraud any existing creditor or creditors, it may be avoided by subsequent creditors; in other words, that evidence of collusion against existing creditors is sufficient evidence of fraud against subsequent creditors; (otherwise it would be easy to evade the statute, the party might pay off those to whom he is indebted at the time he is making the settlement, by borrowing of others, and, then, say to these last, 'I did not make the settlement to defraud you, but to defraud the other persons who were my creditors')." It is stated that the foregoing doctrine is probably limited to voluntary conveyances which are accompanied in law by the presumption of a secret trust for the grantor. It is further said on page *41: "An intent actually to defraud creditors is to be legally inferred from the grantor's being insolvent at the time, or greatly embarrassed, or so largely indebted that his conveyance necessarily has the effect to hinder and defraud creditors, * * and a voluntary convey-

ance made under such circumstances may be set aside by a subsequent creditor." In some of the cases referred to in note (1), p. 41, we find that the registration laws have been regarded as settling the law to the extent that a subsequent creditor can not complain of a voluntary deed of which he has constructive notice, *except on the ground of actual fraud. Cooke's Lessee v. Kell,* 13 Md. 469; *Kane v. Roberts,* 40 Md. 590. In the last case the headnote states the law as follows: "A deed fraudulent and void as against the grantor's antecedent creditors is valid, if recorded, as against subsequent creditors, when there is nothing in the deed itself and no evidence to show any intent or design to defraud such creditors." In the case of *Walker, Evans & Cogswell v. Bollman,* 22 S. C. 512, the court held that a subsequent creditor could not attack a prior voluntary deed of which he had notice, on the ground that it was voluntary, but that he could do so on the ground that it was made with reference to future indebtedness, or other circumstances of fraud other than its being voluntary. Also see *Moore v. Blondheim,* 19 Md. 172; *Brundage v. Cheneworth,* 101 Iowa, 256, 70 N. W. Rep. 211; *Jackson v. Plyer,* 38 S. C. 496, 17 S. E. Rep. 255, S. C. 37 Am. St. Rep. 782. See, also, the following annotated cases: *Jenkins v. Clement,* 14 Am. Dec. 706; *Hagerman v. Buchanan,* 14 Am. St. Rep. 751-2, *et seq;* *Rudy v. Austin,* 35 Am. St. Rep. 85, *et seq.* On page 752, 14 Am. St. Rep., *supra,* the annotator discussing the effect of a conveyance as against subsequent creditors, says: "We apprehend that no general rule can be formulated equally applicable to all cases, and that such judicial declarations as have been made upon the subject must be interpreted with reference to the particular facts of the case in which they were made. If the subsequent debts were contracted long after the voluntary transfer was made, the presumption that it might have been made with a view of contracting them and of defrauding the subsequent creditors certainly becomes exceedingly weak, and may reasonably be treated as entirely destroyed, unless other circumstances appear to give

it renewed vitality. The evidence may, on the other hand, disclose that the subsequent debts have merely taken the place of prior ones, or that the debtor has continued or embarked in a business in which his becoming indebted was inevitable, or there may be other circumstances of the like persuasive character, creating or strengthening the presumption that as the transfer was in fraud of prior, it was also in fraud of subsequent creditors." Bump on Fraudulent Conveyances (4th ed.), sections 293-296. After a careful examination of many cases this doctrine seems reasonable. We are unable to discover how constructive, or even actual notice of the execution of a voluntary deed by a debtor could of itself inform a subsequent creditor of the secret purposes of the debtor in making the deed, of his insolvency, of his intention to contract large debts, or of his intention to engage in a hazardous enterprise, the risks of which he was seeking to avoid, or of other fraudulent and covinous purposes he might entertain so as to shut off the subsequent creditor from attacking the voluntary deed for such or other sufficient causes. See *Diggs v. McCullough,* 69 Md. 592, 16 Atl. Rep. 453; *Scott v. Keane,* 87 Md. 709, 40 Atl. Rep. 1070; *Baltimore High Grade Brick Co. v. Amos,* 95 Md. 571, — Atl. Rep. —. Our opinion is that, in so far as the instant case is concerned, where the bill is filed by a trustee in bankruptcy representing all classes of creditors, and where the facts are such as are here alleged, the bill is not obnoxious to the demurrer which was interposed.

It is, therefore, adjudged, ordered and decreed that the order sustaining the demurrer be and the same is hereby reversed and the cause remanded for further proceedings in accordance with law.

TAYLOR, C. J., and COCKRELL, J., concur.

CARTER, SHACKLEFORD and WHITFIELD, JJ., concur in the opinion.