J. W. HOBBS AND NANCY E. HOBBS, *Appellants*, v. J. W. FRAZIER, TRUSTEE IN BANKRUPTCY, *Appellee.*

1.  Where there is a demurrer to an amended bill on the ground that it presents a cause of action entirely different from and foreign to the cause of action alleged in the original bill, and the original bill is not a part of the record in the case before this court, such a ground will not be considered here.

2.  The law applicable to ordinary creditors' bills, in which judgments must first be obtained, does not apply to a bill filed by

a Trustee in Bankruptcy. See case of Beasley v. Coggins, 48 Fla., 215, 37 South. Rep., 213.

3.  Under the United States Bankruptcy Law, a State court has jurisdiction of a bill in equity filed by a trustee in bankruptcy to set aside a fraudulent conveyance of his property by a bankrupt.

4.  When a married woman voluntarily permits her husband to use her money as his own by investing it in property in his own name, and thereby obtains credit on the faith of his being the owner of such property, she will not be allowed in equity to claim the property so acquired, to the detriment of his creditors.

This case was decided by Division B.

Appeal from the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the court.

*G. B. Wells,* for Appellant;

*H. S. Hampton,* for Appellee.

HOCKER, J.—The record before us shows that on the 24th day of April, 1909, the appellee filed an amended bill in the circuit court of Hillsborough county against the appellants. This record does not set forth the original bill or its contents.

The amended bill is in substance as follows: That on the 8th of December, 1907, J. W. Frazier, the complainant, was duly elected trustee in bankruptcy of the estate of J. W. Hobbs and duly qualified as such; that during April, 1907, said J. W. Hobbs was engaged in the saloon business at Plant City, Florida, and was seized and possessed

of an undivided one-half interest in and to the following land, tenements and hereditaments situate in Hillsborough county, Florida, to-wit: Block three (3) of I..M. Allen's subdivision of that part of the northwest quarter of the southwest quarter of section 28, township 28, range 22 east, lying south of the main line and east of the spur line of the Atlantic Coast Line Railroad Company, and also an undivided one-half interest in and to certain furniture situate on the premises last above described and used in connection with the said business as a saloon and hotel, and that said J. W. Hobbs contracted large amounts of debts on the faith of the ownership of said property; and that during the month of July the said Hobbs became utterly insolvent and continued insolvent up to the time of the institution of this suit; that during the month of October, 1907, said Hobbs filed a voluntary petition in bankruptcy in the United States Court for the Southern District of Florida, and just prior to the filing of said voluntary petition in bankruptcy the said J. W. Hobbs caused the title to said property to be transferred and placed in the name of his said wife Nancy E. Hobbs, and that this was done for the purpose of hindering, delaying and defrauding the creditors of the said J. W. Hobbs, and that Nancy E. Hobbs had notice of such purpose, or was aware of such facts as would place a reasonable person upon inquiry as to such purpose, and that in reality the property is that of J. W. Hobbs, and that his indebtedness is still unsatisfied.

. The amended bill also alleges that J. W. Hobbs and Nancy E. Hobbs are utterly insolvent; that said property is rented at about one hundred dollars per month; that Nancy E. Hobbs is collecting the rents, issues and profits thereof, and is concealing and disposing of the same, and that in order to protect the rights and interests of com-

plainant it is absolutely necessary to appoint a receiver to collect the rents, issues and profits of said property, and to hold the same until the final determination of this suit.

The amended bill, among other things, prays for an answer, not under oath, that the title to said property be adjudicated to be in J. W. Hobbs and his estate in bankruptcy; that any alleged transfer of the same be declared fraudulent and void as to the complainant, for a receiver, and for general relief.

The defendants demurred to the amended bill on eight grounds, in substance as follows:

1st. The amended bill is not an amendment of the original bill, but presents an entirely different cause of action, foreign to that of the original bill.

2nd. Does not show in whose behalf or interest it is filed.

3rd. Does not show that J. W. Hobbs or Nancy E. Hobbs is indebted to any one.

4th. Does not show that the alleged creditors were not fully satisfied for all claims against defendants.

5th. Does not show that J. W. Hobbs has not paid or satisfied all his creditors.

6th. Does not show that Frazier, trustee, is authorized and empowered by the creditors of Hobbs to sue in this manner on their behalf severally.

7th. Does not show that J. W. Hobbs has not been discharged in bankruptcy and freed from liability to his creditors.

8th. And for other causes apparent on the bill.

This demurrer was overruled and defendants permitted to answer. J. W. Hobbs answered the bill admitting that Frazier was elected and had qualified as trustee in bankruptcy; that the claims set forth in the bill are cognizable in the District Court of the United States, and not in the

Circuit Court of Florida; that on or about the 22nd of November, 1907, being unable to pay his debts in full, and being willing that all his property except his exempt property should be administered for the benefit of his creditors, he filed a voluntary petition in bankruptcy in the District Court of the United States for the Southern District of Florida, and thereby placed himself and all his assets in the jurisdiction of said court for the purpose of having himself adjudicated a bankrupt and his assets administered for the benefit of his creditors; that he was duly adjudicated a bankrupt about the 22nd of November, 1907, and that the bankruptcy laws have precedence over the laws of Florida in the premises; that on the 18th of March, 1909, he was by the said District Court of the United States duly discharged from the obligation of all his debts represented by the complainant as trustee. Further answering he alleges that he is not the owner of, nor is he seized of a half interest in the lands described in the bill, but that the legal title thereof is vested in his wife Nancy E. Hobbs. He denies that he caused the title to said lands to be transferred to his said wife for the purpose of hindering, delaying and defrauding his creditors, but alleges that the said interest in said real estate was purchased by him with money belonging to and furnished by his said wife as an investment, and that no part of the purchase price thereof was furnished by him. Further answering defendant alleges that the bill is bad in that the trustee does not show on whose behalf he sues, and to whom the defendant is indebted, and that creditors have obtained judgments against defendant, and prays the same advantage as if he had pleaded or demurred to the bill.

Nancy E. Hobbs answered the bill, setting up that she was the owner in fee simple and is in possession of the real estate described in the bill, and alleges that said real estate is not the property of the defendant J. W. Hobbs,

but is her property "free and absolute." She also denies that the complainant trustee is entitled to the relief demanded, and prays the same advantage of this answer as if she had pleaded or demurred to the bill. Replications were filed and testimony taken. Upon a final hearing a decree was entered, in substance, finding the equities in favor of complainant; that the purchase money for the property involved was furnished by J. W. Hobbs, the transfer to Nancy E. Hobbs, fraudulent and void; that the equitable title was in J. W. Hobbs, and that said property is the property of his estate in bankruptcy. It was ordered that the deed to Nancy E. Hobbs be set aside, vacated and declared null and void as to the trustee in bankruptcy, and that Nancy E. Hobbs do make, execute and deliver to the complainant as trustee in bankruptcy of the estate of J. W. Hobbs, within five days, a deed conveying the said property, and in case of her failure to do so, the decree shall operate as a conveyance of said property.

The first assignment of error is based on the overruling of the demurrer to the amended bill. The first ground of demurrer presented is that the amended bill presents "a cause of action entirely different and foreign to the cause of action alleged in the original bill." As we have stated the original bill is not contained in the record before us. It is stated in the brief of appellant that the original bill was for a partition of the real estate, but inasmuch as said bill is not contained in the record we are now considering, we are not advised that it is our duty to go outside of the record before us to determine the point raised by the demurrer; for such a determination would involve a consideration of both bills, one of them being no part of the record before us. No authority is shown in support of such a course of procedure.

The next contention presented by the demurrer is that

the bill does not show in whose behalf or in whose interest
the said bill is filed.   It is contended that the amended
bill, if anything, is a creditor's bill, and fails to give the
names of creditors or show that their claims have been re-
duced to judgment, or that any creditors have filed their
claims with the trustee as provided by the bankruptcy
law.   As J. W. Hobbs by his voluntary act placed his es-
tate in the bankruptcy court for administration, he there-
by asserted that he was indebted to the point of insolvency,
and we are not advised by any cited authority that he is in
a position to question the authority of the trustee to take
proper steps to reduce his assets into possession for the
purpose of administration.   The law applicable to ordin-
ary creditors bills, in which judgments must first be ob-
tained, does not apply to the instant case.   Beasley v. Cog-
gins, 48 Fla., 215, 37 South. Rep., 213.   In passing we ob-
serve that so far as we can discover from the brief, the
parties to this suit are not advised of this last mentioned
decision of this court, wherein it is held among other
things that "a trustee in bankruptcy appointed under the
provisions of the act of Congress to establish a uniform
system of bankruptcy, passed July 1st, 1898, occupies a re-
lation similar to that of a judgment creditor of the bank-
rupt, and may file a bill in equity to set aside a fraudu-
lent conveyance of real estate by the bankrupt, although
neither he (the trustee) nor any creditor has reduced his
claim against the bankrupt to judgment."   These are the
only questions arising from the overruling of the demurrer
which are argued in the original brief of the appellants,
and upon these we discover no reversible error.

The second assignment of error assails the final decree
because therein the court asserted jurisdiction of the sub-
ject-matter and the parties.   The contention in this assign-
ment is that the National Bankruptcy Laws give exclusive

jurisdiction of the administration of a bankrupt's estate to the District Courts of the United States. The fallacy of this contention is apparent from the case of Bardes v. Hawarden Bank, 178 U. S., 524, 536, 537, 20 Sup. Ct. Rep., 1000, in which it is clearly stated that State courts have jurisdiction of suits like the present one. See Beasley v. Coggins, *supra*.

The third, fourth, fifth, sixth, seventh and eighth assignments question the correctness of the decree in finding the equities for the complainant, in finding that the purchase price of the property described in the bill was furnished by J. W. Hobbs, that the transfer from J. W. Hobbs to Nancy E. Hobbs was fraudulent, null and void, and for the purpose of defrauding the creditors of J. W. Hobbs; that J. W. Hobbs had an equitable title in the property; that the deed to Nancy E. Hobbs be set aside and vacated, as to the trustee.

In the case of Kahn v. Weinlander, 39 Fla., 210, 22 South. Rep., 653, this court held that in a contest between creditors of an insolvent debtor and the latter's wife over real estate purchased in her name during the husband's indebtedness, there must be clear proof that the purchase was made with the wife's separate funds, otherwise the presumption is that it was through means furnished by her husband." See also Claflin v. Ambrose, 37 Fla., 78, 19 South. Rep., 628; McKeown v. Allen, 37 Fla., 490, 20 South. Rep., 556. In the case of American Freehold Land & Mortgage Co. v. Maxwell, 39 Fla., 489, 22 South. Rep., 751, it is held that "a husband's declarations made subsequent to a conveyance of lands from him to his wife, to the effect that the lands so conveyed were purchased by him with money or property of the wife are not sufficient to establish a purchase with funds belonging to the separate estate of the wife. In the case of Warner v. Watson, 35 Fla., 402,

17 South. Rep., 654, it is held that when a married woman voluntarily permits her husband to use her money as his own by investing it in property in his own name, and thereby obtains credit on the faith of his being the owner of such property, she cannot be allowed in equity to interpose a claim to the property so acquired by her husband to the detriment of his creditors. The doctrine of estoppel will apply to her under such circumstances in equity.

With reference to the execution of the deed of the land in question to J. W. Hobbs, G. B. Wells testified that he resided at Plant City, Hillsborough County, Florida; that he remembered the transaction as to the execution of the deed to the property in litigation; that in the Spring of 1907, H. H. Johnson and his wife came to his office to make a deed to property in Plant City; that they gave him the description, and that he asked Johnson and his wife to whom to make the deed as grantee. They said they did not remember, but they had sold it to Mr. Hobbs, and so without instruction from Mr. Hobbs he placed his name in the deed as grantee. The deed was executed before him as notary public and delivered to him to be delivered to Mr. Hobbs. It staid in his office some time. Mr. Hobbs went into bankruptcy that year on November 22nd. Witness was his counsel. Before the bankruptcy proceedings witness asked him about the property in litigation and Hobbs told him his wife was to be the grantee. Hobbs instructed witness to place her name as grantee in the deed. Witness told him his (Hobbs') name had been placed in the deed as grantee, not knowing to whom he wanted in the deed as grantee. Witness then wrote in the deed the name of Nancy E. Hobbs, wife of J. W. Hobbs. When the deed was executed witness notified Hobbs of its existence two or three days after its execution, and that it was to be delivered to him; that his name was in it as grantee. He

told witness he desired his wife's name to be placed in it as grantee. Witness kept the deed, and two or three months later made the change. On cross-examination Mr. Wells could not be positive as to the time when Hobbs told him about the change in the name of the grantee.

Mr. Goodwin testified that he was vice president of the Ullman Company engaged in the whiskey business; that he knew J. W. Hobbs; that in May 1907 he had a talk with J. W. Hobbs about his assets; that Hobbs enumerated this piece of property as being his own—said it was worth about $5000.00; that relying on this piece of property he extended a credit of between $800.00 and $900.00; that his firm was still a creditor of J. W. Hobbs.

The testimony taken in the bankruptcy case was by consent filed in this case. From the testimony of Mr. Hobbs it appears that when he married Mrs. Hobbs she had twenty acres of land worth about $400.00. This property, with some of his own, they swapped for another piece about half a mile from Plant City. They sold this property for $1400.00, of which amount he owed his wife $400.00. The title to this second piece of property was taken in his wife's name. Hobbs says he turned the $400.00 over to his wife; she spent part of it, and bought nine head of cattle, that he subsequently sold for $90.00. He does not know how much she put in bank, $75.00 or $135.00, he does not remember which. She kept the balance in the house. He advised her to put her money into a piece of property in the bottom. Porter said he would go half on it. Witness and Porter bought it for $2500. cash; Acme Brewing Company have a mortgage for $1000 on it; paid the money to H. H. Johnson; got part of the money from his wife, $500 in cash; the title to the property was taken in his wife's name and Porter's; they paid $500 in cash and gave a note for the balance; his wife's name

is not on the note; they borrowed $1500 from the Acme Brewing Company and gave a mortgage on the property; does not think his wife's name is on the note to the Acme Brewing Company. It seems that Porter and Hobbs had paid $500 to the Acme Brewing Company which money was borrowed from the Ybor City Bank. Porter and witness have received $250 a month rental for the property, his wife has got part of the rent each month, and she owes the Acme Brewing Company $1000, though her name is not on the paper at all. Hobbs testified that he owed the Acme Brewing Company a little over $700. He testified that he was in business from the first of October, until the fourth of July when he was burnt out. His business was prosperous up to that time. He paid some of the insurance money to Ullman & Co. and others; that his wife had kept her bank account with the Hillsborough State Bank continuously since she made her first deposit; did not know the amount of her deposit; since October he began to do business in his wife's name, but had not put any money in any bank in his wife's name until last week (before he testified). It seems from Mr. Hobbs' testimony that he was burnt out twice in the Summer and Fall of 1907, and that he was very much embarrassed by these misfortunes and was endeavoring to do business in his wife's name and otherwise.

Mrs. J. W. Hobbs testified that at the time of her marriage she had no separate property. After her marriage she inherited from her grandfather some land and cattle. She says there were about ten head of cattle, and some and near Plant City. She exchanged the land she got from her grandfather with a Mr. Hawkins. She sold this land to a Mr. Riggns, does not know exactly what she got for it—about $1200 or $1300. She says she invested this money in property in Plant City, known as the Bottoms.

She did not put $1300 on this property—about $500, she thinks, though she is not sure. Does not know what she got for the cattle. She invested the rest of the money in her husband's·business. She does not know whether any other than the $500 has been paid for the Bottoms' property. Mr. Hobbs was her agent and did the buying. Mr. Hobbs had charge of her bank account; she does not know what the price of the Bottoms' property was, nor what she had to pay for it. Mr. Hobbs attended to all her business matters; he made her deposits for her in bank; she never knew how her account stood; she never gave a purchase price mortgage on the Bottoms' property; she does not know whether she had any interest in the business in the Bottoms' or not; she supposed her money was used in keeping up the business in the Bottoms; she does not recall giving Mr. Hobbs any money, and does not know whether he is indebted to her; he used her money as he pleased; she has never received a deed to the Bottoms' property; her husband managed everything with reference to the Bottoms' property; she and Mr. Porter are in possession of the Bottoms' property; she does not know how much land there is in the Bottoms' property; she says her husband did not pay the rent to her monthly; she does not know whether he deposited it; she does not know whether the saloon business is her husband's or hers; she has never seen the deed to the Bottoms' property; Mr. Hobbs was authorized to draw checks on her account; she does not know how long she had carried a bank account; she does not know whether she received cash for the Hawkins' property, or whether she received the consideration in some other way; she says she supposes they received $600 or $700 in cash. She says "we spent the cash in the Bottoms."

Mr. Porter was asked whether he and Hobbs ever bought

any real estate together. He answered that he was not clear on the question. "The way the transaction occurred was that I learned that Mr. Hobbs was in trouble and I went up to Plant City, and he wanted $2500. I didn't have the money and neither did he. I made arrangements by which I got $1500, and he got $500. He stated that he didn't have the $500, but got it from his wife." Mr. Porter says he didn't pay any of it; that a mortgage was given to the Acme Brewing Company for $2500. Mr. Porter states that the business of the Acme Brewing Company was taken over by the Chattanooga Brewing Company. It is unnecessary to go into the details of the relations of Hobbs and Porter to these Brewing Companies, or their methods of gettings licenses and doing business. Mr. Porter says he was the agent of the Acme Brewing Company, and had full power to protect them.

Mr. Victor Pough testified that he was a salesman for a wholesale liquor house; that he knew J. W. Hobbs; that he was familiar with the real estate in the Bottoms of Plant City, known as the Hobbs and Porter property; that he first saw the property about a year before he testified; that a liquor business was conducted in the building; that Hobbs told him that he, Hobbs, and Porter were interested in the property; that he afterwards told him it was some of his wife's property; that relying on his statement that he was interested in the property, he sold him some goods, but not after that; that Hobbs said the property was worth about three or four thousand dollars. The foregoing is a summary of the evidence on which the court acted.

It does not appear from the record that the deed from Johnson and wife to J. W. Hobbs, made in April 1907, was ever recorded, or that any one except the parties to it and Mr. Wells knew its contents. It is entirely prob-

able from the evidence that J. W. Hobbs did not direct Wells to erase his name as the grantee therein and substitute that of Mrs. Hobbs until after J. W. Hobbs had been first burned out in July and had become financially embarrassed. It is plain that Mrs. Hobbs allowed her husband to use her money in his business as he saw fit. There is no positive testimony except that of J. W. Hobbs that any portion of Mrs. Hobbs' money was used in the purchase of the land in question. Mrs. Hobbs' assertion is evidently based on what she learned from her husband. It is in testimony that J. W. Hobbs obtained credit on his representations that he was the owner of the property in controversy. It may be true that, in stricti juris, the act of Wells in erasing the name of J. W. Hobbs as grantee in the deed, and the placing by him therein of Mrs. Hobbs' name was ineffectual to pass the legal title to her; but as both Hobbs and his wife in their sworn answers averred that Mrs. Hobbs was by virtue of Wells' act the owner of the property, it does not lie in their mouth to object that the Circuit Judge found the title to be in her. Applying the principles enumerated in the cases to which we have referred to the pleadings and evidence in this case, it seems to us that the decree in this case does substantial justice and equity between the parties. Cimino v. Smith, 57 Fla., 383, 49 South. Rep., 545.

The decree appealed from is affirmed.

TAYLOR and PARKHILL, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.