### In re McCORMICK.

#### (District Court, S. D. Florida. May, 1921.)

1. **Bankruptcy ⬅310—Trustee can contest lien of mortgage recorded before bankruptcy.**

Since the trustee in bankruptcy has authority, under Bankruptcy Act, § 47a2 (Comp. St. 9631), to bring suit to set aside as fraudulent a chattel mortgage recorded only a few days before bankruptcy, he can contest the lien of such mortgage on the mortgagee's petition for a preferred claim, even though none of the other creditors had acquired a lien on the property prior to the bankruptcy.

2. **Chattel mortgages ⬅194—Withholding from record may be badge of fraud.**

Though the mere fact that a chattel mortgage is not recorded is not sufficient to impute fraud, it may be, when taken in connection with other facts, a badge of fraud.

3. **Chattel mortgages ⬅181—May become fraudulent subsequent to execution.**

A chattel mortgage not fraudulent at its execution may become so by reason of the subsequent acts of the parties, as to creditors extending credit after the execution of the instrument and in ignorance of its existence.

4. **Bankruptcy ⬅340—Evidence held to show chattel mortgage was withheld from record to defraud creditors.**

Evidence that a chattel mortgage covering the stock and fixtures of business sold by the mortgagee to the mortgagor was withheld from record, under an agreement that the mortgagee would be notified in time to record the mortgage before bankruptcy, *held* sufficient to show that the mortgagee knew the recording of the mortgage would injure the mortgagor's credit, and withheld recording to avoid such injury, and thereby permitted the mortgagor to acquire on credit merchandise from the sale of which payments would be made on the mortgage debt, so that the mortgage became fraudulent as to subsequent creditors.

5. **Bankruptcy ⬅184(2)—Seller of chattels, who took fraudulent mortgage, held to have no vendor's lien.**

Where the seller of a business took a chattel mortgage covering the stock and fixtures, which was fraudulent as to creditors, because withheld from record to increase the credit of the buyer, the seller is not entitled to claim a vendor's lien against the fixtures after the bankruptcy of the buyer.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of the estate of L. C. McCormick, bankrupt. On petition to review and revise an order of the referee denying the claim of petitioners as a preferred claim against the proceeds of a sale of the bankrupt's fixtures. Petition denied.

Johnson & McIllvaine, of Jacksonville, Fla., for petitioners.
Paradise & Lewis, of Jacksonville, Fla., for respondent.

CALL, District Judge. This cause comes on for a hearing upon the petition to review and revise the order of the referee made on the 18th day of March, 1921. On the 14th day of August, 1917, the petitioners, Sharp's drug store, a copartnership, sold to the bankrupt a drug store, including stock of goods and fixtures, for $1,200 cash, a promissory note for $3,889, payable in installments, secured by a mortgage on the stock and fixtures, the fixtures being described in the mortgage, and the assumption by the purchaser of a certain debt. This mortgage was not filed for record until November 5, 1920. November 8, 1920, bankrupt filed his petition and was adjudged a bankrupt.

The debt evidenced by the promissory note at the time of adjudication in bankruptcy had been reduced by partial payments to the sum of $1,369.40 and some interest. The fixtures were sold by the trustee for an amount in excess of the claim of petitioners and the proceeds kept separate from the other funds. On November 23, 1920, the copartners filed a petition seeking to have their claim preferred in so far as the value of the fixtures would permit—the petitioners releasing any claim for priority on the stock of merchandise. The trustee filed some seven objections to the allowance of the claim as a priority. The referee took testimony and entered the order disallowing the claim as preferred, but allowed it as general.

Thereupon the copartners filed this petition to review, assigning eight errors. Two main questions are raised by these assignments: First, that the referee erred in holding that the trustee could attack the mortgage filed for record before the bankruptcy proceedings, none of the general creditors having any specific lien prior to such recordation. Second, that the referee erred in holding that there was a fraudulent withholding of the mortgage from record.

[1] As to the contention first above mentioned, I see no merit in it. The trustee under section 47a2 of the Bankruptcy Act (Comp. St. § 9631) would have had authority to file a bill to set aside this mortgage as fraudulent against creditors of the bankrupt and thus avoided any priority or preference of the debt attempted to be secured thereby. See, also, D. P. Beasley, Trustee, v. P. S. Coggins and Wife, 48 Fla. 215, 37 South. 213, 5 Ann. Cas. 801. Surely, if he can bring a suit to declare void as against creditors, a mortgage, he is in position to contest the validity of the lien in a proceeding seeking to fix the lien of such mortgage as a preference upon property of the bankrupt in his hands for administration. I fail to see the force of the contention that he cannot do this in case the instrument is recorded prior to the bankruptcy proceedings. The referee in this case seems to have found from the facts before him that the parties to this transaction by their acts sub-

sequent to the making of the mortgage perpetrated a fraud upon the general creditors of the bankrupt, or that the partnership had by their acts estopped themselves from claiming the lien of the mortgage.

[2, 3] While under the decisions the mere fact that an instrument is not recorded is not sufficient to impute fraud, it may be, when taken in connection with the other facts, a badge of fraud. And it is well settled by the authorities that an instrument not fraudulent at its execution may become so by reason of the subsequent acts of the parties, as to creditors extending credit after the execution of the instrument and in ignorance of its existence.

[4] In the instant case, the mortgage was given to secure a part of the purchase money for the goods and fixtures, and was based upon a good and valid consideration and so far as the fixtures, valid. The possession of the property was delivered to the mortgagor and he remained continuously in possession, selling stock and renewing same, and received credit from various persons for goods sold him on the ostensible ownership of the entire property free from mortgage liens. And this condition continued from the time of the sale and receipt of the mortgage on August 14, 1917, until November 5, 1920, when for the first time this mortgage is filed for record, and for the first time the world put on notice that a lien was claimed on the property. The mortgagor in the meantime had made payments on the note secured by the mortgage, presumably from the receipts of the business. Then in July, 1920, one of the mortgagees inquires about the business, receives four postdated checks, and receives the promise of the mortgagor that he will notify him if he sees that he cannot pull through, in time to get his mortgage on record four months before failure. The effect upon the credit of the mortgagor, of placing this mortgage on record, was discussed, and it taxes one's credulity to the breaking point to think that the mortgagees were not fully aware that the placing on record of this mortgage would not have ruined any credit the mortgagor might have had. The gentlemen's agreement the mortgagor speaks of in his testimony bears out the conclusion that the withholding from record of this mortgage was for the purpose of inflating the credit of the mortgagor and inducing dealers, ignorant of its existence, to sell him goods. The circumstances surrounding the parties can lead to no other conclusion than that this mortgage was withheld from record for the above purpose.

It would be highly inequitable, it seems to me, to allow the petitioners in this case to hold their mortgage for three or more years secreted, in the meantime receiving payments on their secret lien from the receipts of the business, made possible by the sale of goods received from other dealers who were ignorant of this lien that mortgagor and mortgagees kept locked in their breasts, and then, when the end is reached, come in and absorb the greater part of the value of the fixtures.

[5] Petitioners insist that they have a vendor's lien, but this insistence I do not think well taken. Section 3838 of the General Revised Statutes of the state of Florida provides as follows:

"No chattel mortgage shall be valid or effectual against creditors or subsequent purchasers for a valuable consideration and without notice unless it

be recorded, or unless the property included in it be delivered to the mortgagee and continue to remain truly and bona fide in his possession."

Petitioners insist that the creditors there referred to are lien creditors, and that, as there is no time within which the mortgage is to be recorded, the recordation of the mortgage before the bankruptcy proceedings were commenced, satisfies the requirements of the statute.

The creditors in this case it is true are not lien creditors, but the debts to each were incurred subsequent to the making of the mortgage and the credit extended on the strength of the apparent unincumbered ownership of the stock and fixtures, and while the Supreme Court of the state has decided that the creditor, in order to attack a conveyance as hindering and delaying creditors must be a lien creditor, it seems to me that that is a matter of procedure which is governed in the instant case by the Florida case above referred to. The statute above quoted is a recording statute intended to give notice to any one dealing with the mortgagor in regard to the mortgaged property either as creditor or purchaser. Unless such notice is given in either of the ways there pointed out the Legislature intended that the mortgage should be held invalid against those parties, and when it said creditors it meant creditors who had been induced to extend credit on the strength of the apparent unincumbered ownership of property.

However, in the view I take of the case, it is not necessary that the affirmance of the order of the referee be placed on this ground; but the affirmance is placed upon the ground that the mortgagees willfully and knowingly withheld from record this mortgage for the purpose of giving the mortgagor credit, and that such conduct was a fraud upon the rights of the creditors, becoming such in ignorance of said mortgage.

An order will be entered denying the petition to revise.